**ALLSTATE INSURANCE COMPANY,**
Appellant,

v.

John **NAPIER** et al., Appellees.

John **NAPIER, Jr.,** et al., Appellants,

v.

**ALLSTATE INSURANCE COMPANY** et al.,
Appellees.

Court of Appeals of Kentucky.

Feb. 1, 1974.

Edward J. Utz, Cincinnati, Ohio, for appellant Allstate Ins. Co.

G. Wayne Bridges, Covington, for appellants-appellees John Napier, Jr., Juanita Napier, and John Napier, Jr., Father and Next Friend of Gary Napier and Ricky Napier.

Adams, Brooking & Stepner, Covington, for appellees Selective Ins. Co. and John Sweeney Pontiac, Inc.

L. T. GRANT, Special Commissioner.

These consolidated appeals arise from a declaratory judgment adjudicating the rights and liabilities of the parties under a garage liability insurance policy and the limits of uninsured-motorist coverage under a standard automobile liability insurance policy.

The appellant Allstate Insurance Company (hereinafter referred to as Allstate) appeals from the trial court's judgment holding that its insureds, John Napier and Juanita Napier, Gary Napier and Ricky Napier (hereinafter referred to as Napiers), were entitled to limits of $10,000 per person and $20,000 per accident for each of two automobiles listed on their policies of insurance for which a separate premium was paid, thereby increasing the limits for uninsured-motorist coverage to $20,000 per person and $40,000 per accident.

The appellants Napiers appeal from the trial court's judgment holding that appellee Warren Pierson was not an additional or omnibus insured under a garage liability insurance policy issued by appellee Selective Insurance Company (hereinafter referred to as Selective) to appellee Jake Sweeney Pontiac, Inc. (hereinafter referred to as Sweeney).

Selective provided garage liability insurance coverage for Sweeney of Cincinnati, Ohio, under a contract of insurance entered into in the State of Ohio. There was an exclusion provision contained in the policy which provided that:

"None of the following are insureds . . . any person or organization, other than the named insured, with respect to any automobile . . . possession of which has been transferred to another pursuant to an agreement of sale . . . ."

On or about March 4, 1968 Warren Pierson, an employee of Sweeney, offered to buy a 1968 Pontiac automobile from Sweeney. On March 6, 1968 Pierson received delivery of the automobile and made application for a ten-day temporary Ohio license tag. As a trade-in on this automobile Pierson traded in a jeep which was delivered to Sweeney, although transfer of title had not taken place.

A purchase order was signed by Pierson in March with no date entered. The purchase order was not signed by Sweeney or any of his agents. Both Pierson and Sweeney signed a security agreement on March 8, 1968. On the same day Pierson made application for an Ohio certificate of title to his new Pontiac automobile which was not issued until March 15, 1968. Sweeney delivered to Pierson an owner's identification and new vehicle warranty form on March 9, 1968.

On March 10, 1968, while driving this automobile, Pierson, engaged in his own business, was involved in an accident in Kenton County, Kentucky. As a result of injuries sustained in the accident, the Napiers obtained judgments against Pierson and one Dawson Eubank. Eubank's insurance carrier satisfied the Napier judgment as to Eubank. The unsatisfied portion of the judgments against Pierson amounts to approximately $70,844.00.

The question presented is whether Pierson is an additional insured under the Selective policy issued to Sweeney so as to make Selective liable for satisfaction of the judgments obtained by the Napiers. The answer to this question hinges on whether or not there was transfer of possession of the automobile from Sweeney to Pierson pursuant to an agreement of sale as stated in the above-quoted exclusion.

In determining this question, we are of the opinion that Ohio law is applicable rather than Kentucky law for the reason that the contract of insurance in question was entered into in the State of Ohio to be performed in the State of Ohio.

The primary argument of the Napiers is that there was no contract of sale because Sweeney or his representative did not sign the purchase agreement. The exclusion contained in the policy does not refer to a contract of sale but rather an agreement of sale. An agreement is defined under the Ohio Revised Code, Section 1301.01(C) as:

"The bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance . . ."

We feel that the facts and circumstances surrounding this transaction between Pierson and Sweeney definitely indicate an agreement of sale.

The Napiers next contend that the exclusion is not applicable because the certificate of title had not been issued to Pierson. In exclusions similar to the one in question, it has been held that an insurance company may validly provide for an exclusion of coverage even though the title has not been received by the purchaser. Cf. Cook v. Kozell, 176 Ohio St. 332, 199 N.E. 2d 566 (1964). The exclusion in the insurance policy did not require possession pursuant to the receipt of a certificate of title.

There are two trial court opinions dealing with the exact language of the exclusion in question that confronts us here. The cases are in direct conflict. Cf. Peffer v. Kenner, 20 Ohio Misc. 163, 250 N. E.2d 122, and Grange Mutual Insurance Company v. Clifford, 13 Ohio Misc. 12, 230 N.E.2d 686.

Under all of the facts in this case, we are of the opinion that possession of the automobile from Sweeney was transferred to Pierson under an agreement of sale and Pierson was not an additional or omnibus insured under the policy issued by Selective to Sweeney. Inasmuch as Pierson was not covered by any automobile liability policy, he was an uninsured motorist. The next question raised on these consolidated appeals is the limit of uninsured-motorist coverage provided the Napiers by Allstate.

John Napier insured two automobiles with Allstate for uninsured-motorist coverage and one of these automobiles was involved in this accident. Although there is some confusion in the briefs as to whether there were two separate policies or one policy, there is a stipulation on pages five and six of the transcript of the proceedings indicating that Napier was issued two separate policies and paid a separate premium for each of the two automobiles.

In the case of Meridian Mutual Insurance Company v. Siddons, Ky., 451 S. W.2d 831, we held that KRS 304.682(1) required each automobile liability insurance policy to contain uninsured-motorist coverage of $10,000 each person and $20,000 each accident unless rejected in writing by the insured. In the instant case the in-

sured Mapier not only did not reject in writing the uninsured-motorist coverage, but paid a premium for said coverage for each automobile. The Napiers are entitled to uninsured-motorist coverage from All-state for the limits stated for each separate automobile.

The judgment is affirmed on both of these appeals.

All concur.