**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1169-23

NEWARK HOUSING
AUTHORITY,

     Plaintiff-Appellant,

v.

EASTERN ATLANTIC STATES
REGIONAL COUNCIL OF
CARPENTERS, LOCAL 253,

     Defendant-Respondent.

_____

Argued October 16, 2024 – Decided January 6, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000219-22.

Richard H. Bauch argued for appellant (Porzio, Bromberg & Newman, PC, attorneys; Richard H. Bauch, of counsel and on the briefs; Thomas J. Reilly, on the briefs).

Seth B. Kennedy argued for respondent (Kroll Heineman Ptasiewicz & Parsons, attorneys; Seth B. Kennedy, of counsel and on the brief).

PER CURIAM

The Newark Housing Authority appeals the trial court's decision confirming a final arbitration award in favor of Eastern Atlantic States Regional Council of Carpenters, Local 253 (Council) that the Housing Authority did not have just cause to terminate Council member and carpenter, Cheniqua Sims. We affirm.

I.

On March 19, 2019, Sims was involved in an automobile accident while at work, suffering injuries to her right knee and other body parts. Her doctor directed her to remain out of work due to her knee injury pending reevaluation. On April 25, under doctor's orders, she returned to work with "light duty accommodations."

On July 9, the Housing Authority approved Sims' request for extended medical leave so that she could undergo knee surgery. Her recovery took longer than expected, exceeding her October 25 return date, because the surgeon discovered an unanticipated ACL tear and replaced the ligament. When Sims

2

returned to work on November 14, the Housing Authority advised her that she would need a doctor's note to return.

On December 30, Sims was reexamined, and her doctor issued a note stating: "[Sims] may return to work on [January 7, 2020] with the following restriction for 6 months: No heavy lifting, no squat[t]ing, no climbing and no kneeling. [She] is to avoid prolonged standing over 3 hours at a time."

On January 6, 2020, the Housing Authority terminated Sims. The agency's termination letter explained "[her] approved leave of absence expired on October 25, 2019," and it could not allow her return to work under her doctor's restrictions because it "do[es] not have light duty" work restrictions.

On January 22, 2020, Sims gave the Housing Authority a doctor's note stating she could return to work with no restrictions. The agency refused to allow her to return to work, claiming it "did not trust the doctor's note." The agency later offered a different reason for not reemploying Sims, claiming a "lack of funding" related to the pandemic.

Prior to Sims' termination, the Council filed two grievances with the Housing Authority pertaining to Sims' employment in accordance with the parties' collective bargaining agreement (CBA). After Sims was terminated, the Council filed for arbitration. The parties agreed the arbitrator would decide: (1)

"Whether the [the Council's] grievance filed on behalf of Cheniqua Sim[]s is timely?"; and (2) "If so, did the [Housing Authority] have just cause to terminate Cheniqua Sims? If not, what shall be the remedy?"

The arbitration hearing covered three days. After reserving his decision, the arbitrator issued an interim award and order finding the grievance was timely filed and there was no just cause to terminate Sims because she "was physically capable of performing the essential duties of the Carpenter job once temporary restrictions were removed."

Expounding on Sims' fitness to work, the arbitrator stated:

> [A]n employer may be justified in terminating an employee permanently unfit to perform the duties of their position but not justified in terminating an employee capable of returning to full duties once the temporary injury or medical condition is resolved. Herein, while temporarily unable to return to work without limitations, there was a reasonable expectation that [] Sims would return to her duties once the interim work limitations were removed. Moreover, aside from [] Sims' temporary recovery from a medical procedure and incidental limitation to perform, there was no other reason evidenced to remove [] Sims from her job as a Carpenter. As the record established, at the time of termination, the only reason offered to justify [the Housing Authority's] decision to terminate employment was [Sims'] inability to physically perform the work required. At the time of the [Council's] filing of its grievance, as advanced through testimony, [the Housing Authority's] reason for discharge was altered

to claim a reduction of work, workplace restrictions and "budget."

. . . .

As the record ultimately revealed, [] Sims' medical issues were resolved, her temporary medical condition corrected and her fitness to return to work confirmed.

Regarding the Housing Authority's lack of just cause for terminating Sims, the arbitrator reasoned:

The generally accepted and often referenced test for just cause includes the question of whether the Company gave the employee forewarning or foreknowledge of the possible disciplinary consequences of the employee's absence. Here, while it is clear that [] [Sims] was out of work due to an injury not of her own fault nor the result of her conduct, the [Housing Authority] issued an immediate discharge once [] Sims submitted the return to work note with "restrictions." The record was absent any communication to [] [Sims] expressing a forewarning of the consequences of [] Sims returning to work with "limitations."

. . . .

[T]he next question is whether [the Housing Authority's] action was reasonably related to the [Housing Authority's] orderly, efficient, and safe operation. Herein, the record is void of any action taken by the [Housing Authority] to replace [] Sims during her absence . . . .

. . . .

A-1169-23

The test of just cause for discipline also asks whether the degree of action taken by the Employer is reasonably related to the seriousness of the employee's proven offense and/or the record of the employee in service to the employer. (See Enterprise Wire Co., 46 L.A. 359[,] 363-64 (1966)). Here, there is no reference to an "offense" committed by [] [Sims] nor a prior poor record of [] [Sims]. Viewing the process of discharge, this Arbitrator concludes that the [Housing Authority] jumped too quickly from recognizing [] [Sim's] injury restrictions to deciding to terminate her.

The arbitrator subsequently issued the remedial award and order. Mirroring the interim award, it stated the Housing Authority must reinstate Sims and reimburse her for lost wages and benefits, mitigated by any outside earnings and disability payments.

The Housing Authority filed a Law Division verified complaint to vacate the arbitration award, which was later amended. The Council in turn moved to confirm the award.

Chancery Division Judge Jodi Lee Alper agreed with the Council and entered an order and written decision confirming the arbitration award. The judge determined the arbitrator did not violate N.J.S.A. 2A:24-8(d) by "exceed[ing] or so imperfectly execut[ing] his power that there was no mutual, final, and definite award, nor was the award procured by undue means." The judge also determined "[t]he [a]rbitrator did not . . . create a new work rule

6

regarding termination of employees unable to perform their essential job functions." Lastly, the judge found that, in the absence of any CBA guidelines, the arbitrator properly exercised his powers and reasonably determined there was no just cause for Sims' termination. The Housing Authority appealed.

## II.

A court's "review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "An arbitrator's award is not to be cast aside lightly. It is subject to being vacated only when it has been shown that a statutory basis justifies that action." Ibid. (quoting Kearny PBA Loc. # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). "In the public sector, an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" Linden Bd. of Educ., 202 N.J. at 276-77 (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007)). A decision to vacate or affirm an arbitration award constitutes the resolution of a legal issue that we review de novo. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013).

Appellate review applies a deferential standard of review to an arbitrator's interpretation of a contract. N.J. Transit Bus Operations, Inc. v. Amalgamated

Transit Union, 187 N.J. 546, 548 (2006). "So long as the arbitrator's interpretation of the contractual language is 'reasonably debatable,' a reviewing court is duty-bound to enforce it." Ibid. (quoting Kearny PBA Loc. # 21, 81 N.J. at 221). Therefore, the arbitrator's interpretation must be based on a reasonable interpretation of the contractual language. Id. at 555.

On the other hand, because our review of a trial judge's order confirming an arbitration award is a question of law, "we owe no special deference to the trial court's interpretation of the law and the legal consequences that flow from the established facts." Yarborough v. State Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018). Our standard of review is thus de novo. Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010). In addition to the statutory criteria in N.J.S.A. 2A:24-8, "a court, 'may vacate an award if it is contrary to existing law.'" Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 202 (2013) (quoting Middletown Twp. PBA Loc. 124, 193 N.J. at 11).

With these principles in mind, we turn to defendant's arguments on appeal.

A.

The Housing Authority argues the arbitration award should be set aside because the "[a]rbitrator . . . did not undertake an effort to interpret [the Housing

8

Authority's] managerial prerogative under the CBA, but rather fashioned a new work rule based upon nothing beyond his own personal sense of fairness." The impermissible new work rule created by the arbitrator, according to the Housing Authority, was that the agency "could not terminate an employee on temporary disability." Relying on PBA Loc. 160 v. Twp. of North Brunswick, 272 N.J. Super. 467, 477 (App. Div. 1994), where this court set aside an arbitration award because the arbitrator's interpretation of the parties' labor agreement was not reasonably debatable given it was based outside of the agreement's language, the Housing Authority argues the new rule ignores Article III of the CBA which "vest[s] [it] with a managerial prerogative to determine the standards of performance for its employees." The Housing Authority contends the arbitration award is not a reasonably debatable interpretation of the CBA and must be vacated. We are unpersuaded.

The CBA provides that the Housing Authority "may discharge any employee for just cause." However, because the CBA does not define "just cause," the parties agreed the arbitrator should decide whether there was just cause to terminate Sims. The arbitrator rejected the Housing Authority's position that it had just cause to terminate Sims because she was physically unable to perform her job as carpenter. Rather, he decided that because Sims'

temporary medical condition keeping her from working without restrictions was going to resolve itself, she could eventually return to work and should not have been terminated. Recognizing the Housing Authority's prerogative to determine the conditions of employment per the CBA, the arbitrator reasoned Sims could have been "temporar[ily] suspen[ded]" while the agency "pursued definitive medical information . . . and considered her continued employment on medical finality." The arbitrator's interpretation and application of just cause was not contrary to the terms of the CBA. He did not create a new rule as the Housing Authority argues but decided—as he was directed—what constitutes just cause. The arbitrator's award does not contradict any clear language of the CBA. Therefore, we discern no basis to vacate his award as it was reasonably debatable.

Moreover, the arbitrator's award is unlike the award in PBA Local 160, which the Housing Authority relies upon. The grievance there concerned a police officer's request for overtime pay related to doctor visits made for a work-related injury. Id. at 470-72. Even though the parties' collective bargaining agreement stated that officers must be "sent" to the employer's doctor to be eligible for overtime pay, the arbitrator found the officer—who was not sent to the employer's doctor—was entitled to overtime pay because the doctor he went

A-1169-23

to accepted his health insurance coverage.  Id. at 475.  We held "no interpretation including the term 'sent' took place and, hence, any so-called interpretation flowing from that premise could not be deemed reasonably debatable."  Id. at 477.  We also held "the arbitrator exceeded the authority granted him in the [CBA] and was not free to disregard the contractual obligation that [the officer] be 'sent' to a township doctor."  Ibid.  In contrast, here, the arbitrator exercised the authority provided by the parties:  he defined just cause, and based on his factual findings, decided Sims should not have been terminated.  He did not disregard the CBA as was the case in PBA Local 160.

B.

Similar to its first argument, the Housing Authority argues the arbitration award must be set aside because the arbitrator exceeded his authority under the CBA by not relying on the language of the CBA and failing to uphold the parties' intent.  Again, we are unpersuaded by the agency's contention.

Where an arbitrator exceeds their power, a court may vacate an award.  N.J.S.A. 2A:24-8(d).  We reiterate that in determining whether the arbitrator has exceeded their power, "the reviewing court [must] determine whether the interpretation of the contractual language contended for by the parties seeking arbitration is reasonably debatable in the minds of ordinary laymen.  If a

11

A-1169-23

debatable question exists, the reviewing court is bound by the arbitrators' decision." Selected Risks Ins. Co. v. Allstate Ins. Co., 179 N.J. Super. 444, 451 (App. Div. 1981). An arbitrator exceeds their authority where they ignore "the clear and unambiguous language of the agreement . . . ." City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist. of City of Newark, 311 N.J. Super. 300, 312 (App. Div. 1998).

The arbitrator did not create a new rule in considering factors outside of the CBA to determine whether the Housing Authority had just cause to discharge Sims. Because the CBA did not define just cause, the arbitrator had to define it and relied on outside factors, including the temporality of Sims' medical leave, the Housing Authority's failure to warn Sims about her potential discharge, and Sims' entire record with the agency. The Housing Authority fails to show the arbitrator's analysis of the just cause provision ignored or contradicted the CBA.

We find support in our Supreme Court's decisions in Linden Board of Education and Loc. No. 153, Off. & Pro. Emps. Int'l Union, AFL-CIO v. Tr. Co. of N. J., 105 N.J. 442, 446 (1987). In Linden Board of Education, the Court held the CBA "did not define just cause for discharge. . . . [T]he expertise of the arbitrator was sought, and the arbitrator was free to determine that the misconduct did not rise to a 'level . . . that constitutes just cause for discharge.'"

A-1169-23

202 N.J. at 279 (quoting Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris, 100 N.J. 383, 394 (1985)).  The Court concluded the arbitrator's determination "that the employee's misconduct was not so egregious to support just cause to terminate" was proper and "satisfied the reasonably debatable standard and did not exceed the limits of his authority."  Id. at 281.  In Local No. 153, the Court confirmed the arbitrator's ability to interpret the undefined just cause provision, as the arbitrator found the employer did not have just cause to terminate the employee for cashing a forged check due to the employee's long-term of service and good record.  105 N.J. at 446.

Any arguments made by the Housing Authority that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION